Ronald C. Minkoff (admitted *pro hac vice*)
FRANKFURT KURNIT KLEIN & SELZ PC
488 Madison Avenue, 10th Floor
New York, New York 10022
Tel: (212) 908-0120
Fax: (212) 593-9175
rminkoff@fkks.com

Kimberley R. McGhee (No. 009728)
LAW OFFICES OF KIMBERLEY R. MCGHEE, P.C.
8880 W. Sunset Rd., Ste. 250
Las Vegas, NV 891483
Tel: (702) 423-9491
kmcghee@kmcgheelaw.com

*Attorneys for Defendant Stephen D. Chakwin, Jr.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

PREFERRED CAPITAL LENDING, INC., an Illinois Corporation; and PREFERRED CAPITAL LENDING OF NEVADA, LLC, a Nevada Limited Liability Company,

        Plaintiffs,

    vs.

STEPHEN D. CHAKWIN, JR., an Individual; DOES I through X inclusive; ROE BUSINESS ENTITY XI through XX, inclusive,

        Defendants.

Case No.: 2:13-CV-00368-GMN-NJK

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS MOTION FOR SUMMARY JUDGMENT, AND IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................1

STATEMENT OF FACTS ...................................................................................1

LEGAL STANDARD ..........................................................................................4

ARGUMENT .......................................................................................................4

I.      THE 2009 LOAN AGREEMENT IS USURIOUS UNDER ILLINOIS LAW .................5

      A.     Illinois Law Governs the 2009 Loan Agreement ......................................5

            1.     The 2009 Loan Agreement is Subject to the Illinois Interest Act ..............5

      B.     The Loan is Usurious under Illinois Law ..................................................6

II.     THE PENALTIES IMPOSED UNDER THE ILLINOIS INTEREST ACT ARE
SUFFICIENT TO EXTINGUISH ALL OF PCL'S CLAIMS .........................................7

III.    PLAINTIFF IS NOT ENTITLED TO RECOVER UNDER A THEORY OF MONEY
LENT .......................................................................................................................9

      A.     PCL's Claim for Money Lent is Precluded by the 2009 Loan Agreement ...........9

      B.     Recovery in Equity is Contrary to the Purpose of the Illinois Interest Act ...........10

CONCLUSION ...................................................................................................10

**INTRODUCTION**

Defendant, Stephen D. Chakwin, Jr. ("Mr. Chakwin" or "Defendant"), by his undersigned attorneys, respectfully submits this Memorandum of Points and Authorities (i) in opposition to the motion by Plaintiffs Preferred Capital Lending Inc., and Preferred Capital Lending of Nevada, LLC (together, "PCL" or "Plaintiffs"), for summary judgment (the "Motion"); and (ii) in support of Defendant's cross-motion for summary judgment.

Plaintiffs have moved for summary judgment based on a loan agreement allegedly entered on or about July 6, 2009 between PCL and Defendant (the "2009 Loan Agreement"), and certain subsequent "roll-over" loans stemming from this Agreement. *See* Motion at 4–8 & Ex. 4. Defendant opposes Plaintiffs' Motion and cross-moves for summary judgment on the ground that the 2009 Loan Agreement (and subsequent "roll-over" loans[1]) on their face violate the Illinois Interest Act, and are therefore usurious as a matter of law.

In the Motion, Plaintiffs also seek adverse inferences due to alleged hardships relating to Defendant's choice to invoke his Fifth Amendment privilege. Motion at 16. Defendant acknowledges that he asserted his privilege under the Fifth Amendment, and does not contest Plaintiffs' Motion on this limited point. Even if this Court grants Plaintiffs' request, however, such inferences would not change what the 2009 Loan Agreement says, or the fact that the Agreement and alleged "roll-overs" are usurious under Illinois state law. Moreover, because these loans are usurious, the 2009 Loan Agreement is voidable, and Plaintiffs are subject to statutory penalties that under Illinois law will extinguish their claims in this action.

**STATEMENT OF FACTS**

PCL has alleged that on or about July 6, 2009, Mr. Chakwin, a New York attorney, entered into a written loan agreement with Preferred Capital Lending of Nevada, LLC ("PCL-NV"), which we call the

---

[1] Defendant notes that Plaintiffs have provided only incomplete documentation to support the existence of the "roll-over" loans.

1    2009 Loan Agreement. *See* Motion at 4–8, & Ex. 4. Plaintiffs have submitted with the Motion a copy

2    of the purported 2009 Loan Agreement, which contains a choice of law provision requiring the

3    application of Illinois law. Motion, Ex. 4 at ¶ 17.

4         PCL has alleged that under the 2009 Loan Agreement, PCL-NV loaned Mr. Chakwin, in his

5    individual capacity, $130,000 at an annual interest rate of 39.95% (the "Loan"), meaning that interest for

6    the *first year alone* would total $51,935. *See* Motion at 4, Ex. 4 at ¶ 2 (defining Stephen Chakwin Jr. as

7    "the Borrower"). The 2009 Agreement is secured by "[Mr. Chakwin's] contractual right and claim for

8    attorney's fees and costs under that certain Legal Representation agreement, a copy of which is attached

9    hereto as Exhibit A" (the "Collateral Lawsuit"). Motion, Ex. 4 ¶ 1. No such "Legal Representation

10   agreement" is attached to the Note presented to this Court, or to any copy produced in discovery.[2] The

11   2009 Loan Agreement obligated Mr. Chakwin to pay PCL $181,935 upon the earlier of one year from

12   the date of execution, or the "receipt of payment on account of [Mr. Chakwin's] claim for an attorney's

13   fee" in the Collateral Lawsuit. *Id.* ¶ 2.

14        The 2009 Loan Agreement makes the Loan recourse to Mr. Chakwin personally. *Id.* ¶ 6–8. If

15   the Loan is not paid back within the time provided, the 2009 Loan Agreement contains an "automatic

16   roll-over" provision binding Mr. Chakwin to an identical loan agreement wherein the principal amount

17   of the new loan would be "equal to the original principal amount of the [2009] Loan, *plus all accrued*

18   *and unpaid interest on the [prior] loan. . . ." Id.* ¶ 2 (emphasis added). By the terms of the 2009 Loan

19   Agreement, any "roll-over" loan would be "in form and substance substantially identical" to that

20

21   _____

22        [2] PCL has asserted that Mr. Chakwin signed the 2009 Loan Agreement in PCL-NV's offices, and
     that a PCL-NV employee "finalized" the 2009 Loan Agreement. *See* Affidavit of Brian Garelli,
23   attached as Exhibit 1 to the Motion, ¶¶ 8–9 [ECF No. 26-1]. PCL thus had the complete, original
     documents in its possession, custody, or control at the time of the alleged execution. To the extent PCL
24   is unable to produce a complete copy of the 2009 Loan Agreement, the problem is one of PCL's own
     making.

25        In any event, Mr. Chakwin does not dispute that the Collateral Lawsuit was *Sille v. Parball*,
     Index No. 7-cv-00901 (D. Nev.).

provided for in the 2009 Loan Agreement except, of course, at a higher amount. *Id.* Through this mechanism, PCL charged compound interest.

On January 25, 2013, PCL initiated this action by filing a complaint with this Court, a true and correct copy of which is attached to the declaration of Ronald C. Minkoff (the "Minkoff Decl.") as Exhibit A (the "Complaint"). The Complaint alleges, *inter alia*, that Mr. Chakwin failed to repay the Loan upon its due date in 2010, and that he failed to pay the "roll-over" loan when it came due again in 2011. Complaint ¶ 19–23. As a result, PCL claims that the 2009 Loan Agreement's "automatic roll-over" provision activated twice, each time extending the 2009 Loan Agreement for another year at the significantly higher (i.e., compounded) principal amount. *Id.* At the time the Complaint was filed, PCL claimed that Mr. Chakwin owed $375,282.50 on the latest "roll-over" loan of $254,618.49. *Id.* at ¶ 7. This means that, according to PCL, Mr. Chakwin was obligated to pay $245,282.50 in accrued interest on the original $130,000 Loan. This calculates to approximately $70,000 per year in interest over a 3.5 year period, meaning that the annual interest rate actually charged was a whopping 53.9%.

On March 12, 2013, Mr. Chakwin filed his Answer. A true and correct copy of this answer is attached to the Minkoff Decl. as Exhibit B. Mr. Chakwin asserted usury as one of his affirmative defenses. *See* Minkoff Decl. Ex. B at ¶ 66.

On September 27, 2013, PCL filed a motion for summary judgment seeking, *inter alia*, $555,481.42 in principal and interest on the Loan and subsequent "roll-over" loans.[3] Plaintiffs moved for summary judgment based on Mr. Chakwin's alleged breach of the 2009 Loan Agreement and subsequent "roll-over" loans resulting from his failure to repay the Loan after the Collateral Lawsuit settled in September, 2011. Motion at 19. Plaintiffs also seek summary judgment under the common law action of money lent on the same basis. Motion at 16. In the Motion, PCL claims that at least

---

[3] In a footnote in the Motion, PCL erroneously stated that Mr. Chakwin had not produced documents in the litigation, and that PCL was limited to only documents in its possession to make its motion. In fact, not only did Mr. Chakwin produce documents, but PCL used some of those documents as exhibits to the Motion. *See* Motion, Exs. 5, 6 (baring bates-stamps with prefix "CHAKWIN-PCL"). We assume that PCL's statement was accidental, rather than an attempt to mislead the Court.

1   $425,481.42 in interest has accrued on the original $130,000 Loan. At a flat rate, this means interest at

2   $100,113.29 per year over a 4.2 year period, a rate of 77%.

3   ## LEGAL STANDARD

4   In federal court, summary judgment is required under Fed. R. Civ. P. 56(c) when the evidence

5   before the court shows that there is no genuine issue of material fact. *Id.*; *Celotex Corp v. Catrett*, 477

6   U.S. 317, 322 (1986). Facts before the court are viewed in the light most favorable to the non-moving

7   party. *See, e.g.*, *Reynolds v. Wolff*, 916 F. Supp. 1018, 1021 (D. Nev. 1996). The moving party bears

8   the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex*, 477 U.S.

9   323–24 (1986). Where the ultimate burden of persuasion would be on the non-moving party at trial, a

10  moving party may meet the requirements of Rule 56 by demonstrating the non-moving party cannot

11  establish an essential element of its claim. *Id.* at 331.

12  ## ARGUMENT[4]

13  Viewing the evidence provided in the light most favorable to PCL, PCL's claims for damages

14  arising from the 2009 Loan Agreement and subsequent purported "roll-over" agreements must fail.

15  Under the 2009 Loan Agreement, Illinois law applies. The Illinois Interest Act renders the Loan

16  usurious and unlawful. 815 ILCS 205 §§ 4–6. Moreover, PCL is subject to significant penalties for

17  knowingly charging interest in excess of the statutory maximum. 815 ILCS 205 §§4, 6. The penalty is

18  calculated by doubling the amount of all interest claimed under the usurious contracts, and then setting-

19  off that doubled amount against the amounts owed under the contracts, with any remaining balance

20  owed to Mr. Chakwin. *See id.* § 6. The amount of the penalty would be more than enough to extinguish

21  the entire amount claimed by PCL in this action. *Id.* This Court should therefore enter an Order that

22  denies the Motion, grants summary judgment in favor of Mr. Chakwin, dismisses the Complaint with

23  prejudice, and awards Mr. Chakwin any penalties in excess of PCL's claims.

24  ---

25  [4] As required under the relevant legal standard, Defendant assumes for the sake of argument alone – and without waiving his assertion of his rights under the Fifth Amendment – that PCL has established the existence of the 2009 Loan Agreement, and that Mr. Chakwin signed the document.

4

I.

## THE 2009 LOAN AGREEMENT IS USURIOUS UNDER ILLINOIS LAW

**A.    Illinois Law Governs the 2009 Loan Agreement**

The 2009 Loan Agreement contains an unambiguous choice of law provision that states the contract "shall be construed in accordance with and governed by the internal laws of the State of Illinois." Motion, Ex. 4 ¶ 17. Nevada law recognizes that "parties are permitted within broad limits to choose the law that will determine the validity and effect of their contract." *Pentax Corp v. Boyd*, 11 Nev. 1296, 1299 (1995) (citing *Ferdie Sievers and Lake Tahoe Land Co., Inc. v. Diversified Mortg. Investors*, 95 Nev. 811, 815 (1979)). Moreover, Plaintiffs have acknowledged this point in their Motion. Motion at 18 n.3. Illinois state law therefore applies.

**1.    The 2009 Loan Agreement is Subject to the Illinois Interest Act**

The Illinois Interest Act prohibits any person or corporation from receiving any "sum or greater value for [a] loan . . .than is expressly authorized" by the Act. 815 ILCS 205 § 5. The maximum lawful rate of interest for a loan is 9% per annum, unless the transaction falls under one of the statute's enumerated exceptions.[5] 815 ILCS 205 § 4. Section 4(c) creates an exception to the cap for business loans, including those made "to a person owning and operating a business as a sole proprietor," such as a solo attorney like Mr. Chakwin. *Id.* Nevertheless, the Interest Act specifically states "any loan which is secured [ ] by an *assignment of an individual's salary, wages, commissions, or other compensation for services* . . . shall be deemed *not to be a loan within the meaning of this subsection.*" *Id.* (emphasis added). Thus, a business loan *is* subject to the 9% annual interest rate limit if it is secured by the assignment of the obligor's salary, wages, or other compensation. *Id.*

There is no question that the 2009 Loan Agreement states that the Loan is secured by the assignment of Mr. Chakwin's right to compensation for his services as attorney of record in the Collateral Case. The Agreement defines "collateral" as Mr. Chakwin's "right and claim for attorney's

---

[5] Many of these exceptions relate to transactions in real estate, or loans made to corporations, and are wholly inapplicable to this case. *See* Interest Act, 815 ILCS 205 §4 (a)–(n).

fees and costs" in the Collateral Case and states "the Borrower *irrevocably assigns* to the Lender all right, title and interest in the collateral. . . ." Motion Ex. 4 ¶ 3, 4 (emphasis added). The 2009 Loan Agreement therefore falls under Interest Act § 4(c)(1), and does not qualify as an exempt business loan. 815 ILCS 205 §4(c)(1). As a result, the Loan is subject to the 9% per annum maximum limit. *Id.*

**B.      The Loan is Usurious under Illinois Law**

Under Illinois law, the essential elements of usury are (1) a loan or forbearance; (2) of money or its equivalent; (3) absolutely repayable; (4) carrying interest in excess of that allowed by law. *See Clemens v. Crane*, 234 Ill. 215, 229 (1908); *First Nat. Bank of Ottawa v. Larkins*, 111 Ill. App. 3d 953, 954–55 (App. Ct. of Ill. 1983). "Whether a loan is usurious depends on whether the party intended to charge unlawful interest. This question of fact is determined by the nature and substance of the transaction rather than its form, to insure against evasion of the statute by a party's ingenious schemes or devices." *Saskill v. 4-B Acceptance*, 117 Ill. App. 3d 336, 340 (App. Ct. Ill. 1983) (citations omitted).

The 2009 Loan Agreement easily meets each and every element required under Illinois usury law. The Agreement states that PCL-NV would lend Mr. Chakwin $130,000. Motion, Ex. ¶¶ 1, 2 ("This is a single advance loan with a monthly step interest rate as defined within this paragraph."). It makes the sum absolutely repayable, due either one year from the date of execution, or when Mr. Chakwin received his payment due as attorney's fees in the Collateral Case, whichever comes first. *Id.* ¶ 2. The annual interest rate imposed by PCL for the loan was 39.95%,[6] well in excess of the 9% maximum imposed by law. *Id.* ¶ 1. That interest rate, with compounding, has now climbed to 77%. *See* p. 4, *supra*. Finally, each and every "automatic roll-over" was "in form and substance substantially identical" to the 2009 Loan Agreement. *See* Motion, Ex. 4 ¶ 2. PCL charged interest well above 9% on the subsequent loans:[7]

_____

[6] The fact that the interest is styled as a "finance charge" is irrelevant. "A lender may not evade the statute under the guise of assessing charges for the uses of money and terming the charges something other than interest." *Saskill* 117 Ill. App. 3d at 341.

[7] The following information is taken from the Affidavit of Brian Garelli, attached as Exhibit 1 to the Motion [ECF No. 26-1], at paragraphs 12–21.

| "Roll-Over" Date | Total "Finance Charges" (Interest) Claimed | Due Date | Total Due (Including Original Principal) | Calculated Annual Interest Rate |
|---|---|---|---|---|
| 7/6/10 | $124,618.37 | 7/6/11 | $254,618.37 | 47.90% |
| 7/6/11 | $226,338.58 | 7/6/12 | $356,338.58 | 58.03% |

Somehow, as noted, the total interest being claimed is now almost 20% higher. Accordingly, the 2009 Loan and the subsequent "roll-over" loans are usurious as a matter of law.

## II.

## THE PENALTIES IMPOSED UNDER THE ILLINOIS INTEREST ACT ARE SUFFICIENT TO EXTINGUISH ALL OF PCL'S CLAIMS

The Interest Act imposes harsh penalties in the case of knowing usury. "[U]nwitting usurers forfeit all interest charged on the note, while intentional usurers may be charged double the total of all interest charged plus attorney fee and court costs." *Saskill*, 117 Ill. App. 3d. at 342.

The Interest Act provides that when a lender knowingly charges interest in excess of the statutory maximum, the obligor may recover "an amount equal to twice the total of all interest, discount and charges determined by the loan contract or paid by the obligor, whichever is greater, plus reasonable attorney's fees and court costs as may be assessed by a court against the lender." 815 ILCS 205 § 6. "[W]hen a lender intentionally charges unlawful interest the obligor may recover double the amount of *all interest determined by the contract*." *Saskill*, 117 Ill. App. 3d. at 342 (emphasis added). This penalty is then set-off against the amounts due under the contract. *Id.*; See 815 ILCS 205 § 6 ("The payments due and to become due including all interest, discount and charges included therein under the terms of the loan contract, *shall be reduced by the amount which the obligor is thus entitled to recover*.").

Assuming for the sake of argument that the 2009 Loan Agreement is established, PCL knowingly charged 39.95% annual interest and, because of the compounding inherent in the transaction, interest rising to almost double that amount on subsequent "roll-over" loans. The terms of the 2009 Loan Agreement unambiguously state that the annual interest rate shall be 39.95%, and that any subsequent "roll-over" loan will be "in form and substance substantially identical" to the terms of the

1   2009 Loan Agreement – but starting at a higher "principal" amount. Motion, Ex. 4 ¶¶1, 2. PCL is well

2   aware of the interest it has charged under the alleged 2009 Loan Agreement, not only because of the

3   terms of the 2009 Loan Agreement itself, but also because PCL has brought claims in this action based

4   on the compounded 39.95% interest rate in the 2009 Loan Agreement. *See* Motion at 18 (seeking a total

5   of $555,481.42 based on initial principal of $130,000, or 77% annual interest over 4.2 years). PCL may

6   not deny knowing the contents of its own form loan agreement, including the interest rate it requires.

7         By knowingly lending at a usurious rate under the 2009 Loan Agreement, PCL is subject to the

8   penalties imposed by § 6 of the Illinois Interest Act. Moreover, the statute requires that the penalty be

9   set-off against the amounts still allegedly owed under the contract. *See* 815 ILCS 205 § 6. In the

10   Motion, PCL claims that Mr. Chakwin now owes $555,481.42 on the last "roll-over" note of

11   $254,618.49 dated July 6, 2011, which translates to $300,862.93 in interest. *See* Motion at 18 & Ex. 1 at

12   ¶ 28. As we have shown, PCL's true claim is for more than 77% in interest based on the original

13   $130,000 principal lent. However, even based on the interest PCL has claimed, the statutory penalty

14   under Interest Act § 6 would be at least $601,725.86, exclusive of costs and attorneys fees. This amount

15   is more than enough to extinguish PCL's claims, and any amount remaining after this penalty can be

16   awarded to Mr. Chakwin. *See Saskill*, 117 Ill. App. 3d. at 342 ("Because of the length of the loan and

17   the total amount of interest defendants were sought to gain, plaintiff's indebtedness on the note was fully

18   satisfied and in addition she was entitled to recover . . . the amount remaining after the set-off.")

19   (emphasis added).

20         Simply put, if PCL succeeds in establishing that it lent Mr. Chakwin money under the terms

21   alleged, the transaction will trigger the penalty provision of the Illinois Interest Act § 6, which will in

22   turn swallow the entirety of PCL's claimed damages. Thus, there is no operative set of facts under

23   which Plaintiff is entitled to recover from Mr. Chakwin. This court should therefore deny PCL's

24   Motion, and enter summary judgment in favor of Mr. Chakwin.

25

III.

## PLAINTIFF IS NOT ENTITLED TO RECOVER UNDER A THEORY OF MONEY LENT

**A.    PCL's Claim for Money Lent is Precluded by the 2009 Loan Agreement**

PCL is not entitled to recover under its claim for money lent because its claim rests on what it has alleged is a contract governing the transaction at issue. *See* Motion at 17 (arguing that the 2009 Loan Agreement evidences the existence of a loan transaction). PCL has also requested adverse inferences establishing that the 2009 Loan Agreement exists between the parties. *See* Motion at 15.

Under both Nevada and Illinois law, the existence of a contract between the parties precludes recovery in equity. Both Nevada and Illinois law recognize that a plaintiff may not seek to recover under a quasi-contract theory, such as money lent, where there is a written agreement between the parties. *See, e.g., Cromeens, Holloman, Sibert, Inc. v. AB* Volvo, 349 F.3d 376 (7th Cir. 2003) (applying Illinois law, and stating "[a]n unjust enrichment claim is not available when there is an express, written contract, because no agreement can be implied where there is an express agreement"); *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 44 F. Supp. 2d 1184, 1197 (D. Nev. 2006) (applying Nevada law, and reaching the same conclusion). "To permit recovery by quasi-contract where a written agreement exists would constitute a subversion of contractual principles." *Lipshie v. Tracy Inv. Co.*, 93 Nev. 370, 379 (1977). PCL is therefore barred from asserting claims in equity, and must recover, if at all, under its breach of contract claim.

Finally, the fact that its recovery under breach of contract will be entirely set-off by the penalties imposed by the Illinois Interest Act does not mean that PCL has not recovered under the contract. *See Gora v. Bank One Fin. Servs., Inc.*, 1995 WL 431138, No. 95 C 2542, at *3 (N.D. Ill. July 18, 1995) (explaining that the claim for money owed under a loan and the penalty award under the Illinois Interest Act are merely offsetting claims). Thus, the fact that PCL may not actually receive any money under the contract does not revive, or allow it to pursue, claims in equity.

## B. Recovery in Equity is Contrary to the Purpose of the Illinois Interest Act

The Illinois Interest Act is enforced by penalty provisions that are intended to punish lenders who knowingly lend at usurious rates. "The purpose of the usury statute is to protect weak and necessitous borrowers . . . from oppression of unscrupulous lenders. Certainly, a penalty imposing harsh consequences only upon knowing violators is consistent with this purpose." *Saskill*, 117 Ill. App. 3d at 342. "The statute provides a means to penalize the lender rather than compensate the debtor for the excess charges. The purpose of such a harsh penalty is to assure compliance with the Interest Act's protective provisions . . . ." *Gora*, 1995 WL at *3.

It is clear that the Illinois legislature intended the Interest Act penalty provisions to act as a strong deterrent to abusive lending practices. It would be absurd if a would-be usurer could avoid punishment — and recover on his prohibited transaction — simply by abandoning the contract and seeking recovery in equity. Courts must avoid interpreting a statute in a way that would frustrate its purpose or render portions of the statute a nullity. "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc v. Andrews*, 534 U.S. 19 (2001). In light of the clear purpose of the Illinois Interest Act, PCL must be barred from recovering under a money lent theory.

## CONCLUSION

Plaintiffs' have asserted, and have sought adverse inferences to establish, that the 2009 Loan Agreement was executed by the parties, and formed the basis for the Loan to Mr. Chakwin. They are therefore permitted to recover, if at all, only under breach of contract. However, if a valid contract is deemed established, the 2009 Loan Agreement and subsequent "roll-over" loans are subject to the Illinois Interest Act, and the penalty provisions contained in the Act more than offset the full amount of Plaintiffs' claims against Mr. Chakwin. Accordingly, Plaintiffs are not entitled to recover from Mr. Chakwin.

10

1

2

For the foregoing reasons, Defendant respectfully submits that this Court should deny Plaintiffs' motion for summary judgment, and grant Defendant's cross motion for summary judgment.

3

4

Date : October 28, 2013
New York, New York

5

FRANKFURT KURNIT KLEIN & SELZ PC

6

7

By: _Ronald C. Minkoff_

Ronald C. Minkoff

- and –

Kimberly R. McGhee, Esq.
8880 W. Sunset Rd., Ste. 250
Las Vegas, NV 89148
702-423-3491Tel
702-253-7565 Fax

8

9

488 Madison Avenue, 10th Floor
New York, New York 10022
Tel: (212) 908-0120
Fax: (212) 593-9175
rminkoff@fkks.com

Kmcghee@kmcgheelaw.com

10

*Attorneys for Defendant Stephen D. Chakwin, Jr.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

11