UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PREFERRED CAPITAL LENDING, INC., an Illinois Corporation; and PREFERRED CAPITAL LENDING OF NEVADA, LLC, a Nevada Limited Liability Company,<br><br>Plaintiffs,<br><br>vs.<br><br>STEPHEN D. CHAKWIN, JR., an Individual,<br><br>Defendant. | Index No. 1:14-cv-07409 |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' SUR-REPLY [ECF No. 64]**

Pursuant to this Court's Order dated October 22, 2014, Mr. Chakwin, the defendant in this action, hereby respectfully submits this memorandum of law in opposition to Plaintiffs Preferred Capital Lending, Inc. and Preferred Capital Lending of Nevada, LLC (together "PCL"), supplemental reply dated October 22, 2014 [ECF No. 64] (the "Sur-Reply") and in further support of his cross-motion for summary judgment, dated October 28, 2013 [ECF Nos. 31, 33] (the "Cross-Motion").

## PRELIMINARY STATEMENT

Since the outset of this case, Mr. Chakwin has steadfastly asserted that the 2009 Loan violates Illinois law and that PCL is subject to statutory penalties for illegal lending. In its initial motion papers, PCL embraced the fact that its loan agreement was governed by Illinois law.[1] But as Mr. Chakwin drove home his arguments that the loan was usurious under the Illinois Interest Act, PCL began vacillating among several inconsistent and increasingly strained arguments in an effort to avoid liability under that statute. For example, PCL has claimed both that it "intended to make the [2009 Loan] pursuant to Nevada Law" (the Illinois choice of law was a "clerical error")[2] *and* that the 2009 Loan was intended to be a business loan under the Illinois Interest Act.[3] Now, with virtually no time left on the clock,

---

[1] *See* Plaintiff's Motion for Adverse Inference and Summary Judgment dated Sept. 27, 2013 [ECF No. 27] at 18 n.3.

[2] *See* Plaintiffs' reply and opposition to Defendant's cross-motion for summary judgment dated Nov. 27, 2014 [ECF No. 40] (the "First Reply") at 5–9.

[3] *See* First Reply at 12–13.

1

PCL has asserted one last wild theory: the 2009 Loan is somehow a consumer installment loan. *See* Sur-Reply at 4–5.

All of these arguments are ludicrous. PCL is in the business of lending money and is owned and operated by an Illinois attorney. The notion that PCL merely used the wrong form and, as a result, somehow made a loan charging more than 50% annual interest is difficult to swallow. Even more outlandish is PCL's claim that it never intended Illinois law to apply to the loan, especially in the absence of any genuine proof or an affidavit from the PCL employee who provided the form. As to PCL's latest argument, a cursory reading of the Illinois Consumer Installment Loan Act is enough to reject it out of hand. The 2009 Loan is not, and was never intended to be, a consumer installment loan, not least of all because it is not an ***installment loan*** and it was not made to a ***consumer***. In reality, PCL cannot escape the fact that the 2009 Loan is a ***business loan***, (as PCL so vigorously argued in its First Reply 5–9), that was made in violation of the Illinois Interest Act. Nothing in the Sur-Reply compels a different result.

## BRIEF FACTUAL BACKGROUND

PCL is a money lender that advertises itself as "the largest lawsuit finance company in the nation" and maintains offices in several different major cities across the country, including Chicago.[4]

---

[4] *See* "Clients," *available at* http://www.preferredcapitalfunding.com/lawyer-attorney-1815488.php (last visited Nov. 4, 2014).

Mr. Chakwin is a New York attorney, a former solo-practitioner who has since shuttered his individual practice.[5]

This is a straightforward case; none of the essential facts are in dispute on this motion.[6] In or around July 2009, Mr. Chakwin was faced with a desperate situation. *See* Motion at 4. He was litigating a valuable personal injury case against a major Las Vegas hotel, but he needed money to cover his practice's rapidly mounting litigation expenses. *See id.* So Mr. Chakwin did what many other small business owners are forced to do in such a situation — to keep his practice above water, he took a loan from an aggressive lender, PCL, who demanded more than 39% annual interest on the initial loan (the "2009 Loan"). Not content with this rate of return, PCL went on to inflate the effective annual interest rate by compounded the loan over several years. *See* Cross-Motion at 1–3.

This action is PCL's attempt to collect on its illegal loan. As of September 27, 2013, the date of its Motion, PCL seeks an award of more than $555,000 on the

---

[5] PCL has previously tried to draw a distinction between Mr. Chakwin individually and his former business, the "Law Offices of Stephen D. Chakwin." *See* First Reply at 3. But as the face of the Loan Agreement makes clear, the "Law Offices of Stephen D. Chakwin" is a sole proprietorship — it is not described as a P.C., P.A., or LLP — and there is absolutely no evidence that the "law office" is anything more than Mr. Chakwin operating in his personal capacity.

[6] For the purposes of argument on this motion alone, and without waiving his assertion of his rights under the Fifth Amendment, Mr. Chakwin does not contest any of the essential facts that PCL alleges regarding the circumstances of the loan in its motion for summary judgment dated September 27, 2013 [ECF No. 26] (the "Motion"). *See* Decl. of Ronald C. Minkoff dated October 28, 2013 [ECF No. 32] (the "Minkoff Decl.") ¶¶ 3–6. A complete statement of facts is set out in the Cross-Motion. *See* Cross-Motion at 1–3. For the sake of brevity, Mr. Chakwin incorporates the Cross-Motion's statement of facts by reference; capitalized terms not otherwise defined here have the same meaning as set out in the Cross-Motion. Mr. Chakwin does not, however, concede PCL's various legal conclusions, such as that he "breached" the Loan Agreement.

3

original loan of just $130,000, *i.e.* $425,000 in interest over a 4.2 year period (an effective yearly interest rate of 77%).[7] *See* Motion at 8. This amount is now presumably much higher, as PCL claims that the 2009 Loan has continued to accrue interest during this litigation. *See id.*

PCL, however, has a big problem: the underlying loan agreement is governed by Illinois law and the 2009 Loan violates Illinois state usury laws because the interest rate PCL charged is not authorized under ***any*** of the numerous statutory exceptions to the 9% annual interest rate cap set by the Illinois Interest Act. *See* Cross-Motion at 5–7. The 2009 Loan is illegal and void, and PCL is subject to considerable statutory penalties for lending at unlawful interest rates.

## ARGUMENT

**I. THE DEFAULT INTEREST RATE CAP SET BY THE ILLINOIS INTEREST ACT APPLIES TO THE 2009 LOAN.**

Crediting the argument in PCL's Sur-Reply would require this Court to shut its eyes to the plain meaning of both the Illinois Interest Act (the "Interest Act") and the Consumer Installment Loan Act (the "CILA"). PCL's argument wrongly assumes that because the 2009 Loan fails to qualify for the ***business loan*** exception under the Interest Act, the loan itself is somehow not a ***business loan***. But PCL has it backwards: because the 2009 Loan fails to qualify for the business

---

[7] This total includes the original loan made in 2009, along with several "automatic roll-over" loans that PCL asserts were triggered when Mr. Chakwin failed to repay the loan on the due dates in July 2010 and 2011 and incorporate the unpaid prior loan balance as the principal for a new loan. As a practical matter, the original and "roll-over" loans are all part of a single usurious transaction.

4

loan ***exception***, it is simply a ***usurious*** business loan.  There is no question that the 2009 Loan is a "business loan", as defined in the statute, albeit one that is not entitled to the interest rate exemption set out under Section 4 (1)(c) of the Interest Act.  Thus, the 2009 Loan is subject to the Interest Act and is usurious because it purports to charge at least 39.95%, *before compounding*, more than four times the lawful limit.

> **A.     The 2009 Loan is a business loan because it was made and used to pay for Mr. Chakwin's business expenses.**

In its Sur-Reply, PCL posits for the first time that the 2009 Loan may not be a "business loan" within the meaning of the Interest Act.  *See id.* at 2, 5. This argument is bizarre given that PCL devoted five pages of its previous submission to establishing that the 2009 Loan *was* a "business loan" under that statute.  First Reply at 5–9.  Nor can there be any dispute on that point:  from the outset, PCL has openly acknowledged that the loan money was used for business purposes, namely to pay for expenses generated by Mr. Chakwin's law practice as he pursued litigation for a client in Nevada.  *See* Motion at 4.  PCL has not identified any evidence indicating that the proceeds were used for anything other than to support Mr. Chakwin's law practice.  Hence, the 2009 Loan is a "business loan."

That much is common ground.  Where the parties disagree is whether the 2009 Loan falls under the exemption afforded "business loans" by the Interest Act.  The undisputed facts show it does not.

5

### B. The Interest Act's default maximum interest rate applies to the 2009 Loan because the loan does not fall under any enumerated exception, including the exception for "business loans."

Section 4(1) of the Interest Act sets a maximum interest rate of 9% annually for ***all*** lending agreements ***unless*** the transaction is governed by a specific provision within the Interest Act, the Consumer Installment Loan Act, the Consumer Finance Act, or the Payday Reform Act. *See* 815 ILCS 205 § 4 (1). Section 4 (1) is therefore the Illinois statute of general applicability: where no other more specific provision applies, a lending agreement is subject to the 9% interest rate cap.

While generally a business loan may law carry any interest rate, a few types of business loans are *not* exempt under the Interest Act (*i.e.*, they *are* subject to the default 9% interest rate cap). *See* 815 ILCS 205 § 4 (1)(c)(1). Among these excluded business loans are those that are "secured by an assignment of an individual obligor's salary, wages, commissions, or other compensation for services." *Id*. PCL cannot dispute that the 2009 Loan is explicitly secured by Mr. Chakwin's "right and claim for attorney's fees and costs" and that this security was "irrevocably assigned" to PCL. *See* Motion Ex. 4 at PREFERRED-000023–24. While PCL has argued that the fees involved went to Mr. Chakwin's *law firm* rather than Mr. Chakwin individually, *see* First Reply at 3, that argument fails: "The Law Offices of Stephen D. Chakwin" is a sole proprietorship and is identified as such on the retainer agreement[8] PCL relies on (*i.e.,* it is not listed as a P.C., P.A. or LLP), and PCL has

---

[8] First Reply, Ex. 3 (retainer agreement by "The Law Offices of Stephen Chakwin").

6

not supplied any evidence to the contrary. The assignment of Mr. Chakwin's personal fees removes the 2009 Loan from the category of transactions that are exempt from the 9% maximum interest rate.

In interpreting a statute, where a general and specific provision apply, the specific provision controls. *See, e.g., In re Gulevsky*, 362 F.3d 961, 963 (7th Cir. 2004). Here, the Interest Act sets out:

- a general 9% annual interest rate cap for all loan agreements, 815 ILCS 205 § 4(1);
- an exception to the 9% annual interest rate cap for business loans, *id*. § 4(1)(c); and
- an "exception to the exception" for business loans secured by an individual's salary or other compensation, *id*. § 4(1)(c)(1).

This structure is strong evidence that the legislature intended for certain business loans (those secured by an individual's salary or compensation) to be subject to the generally applicable 9% interest rate cap. As the 2009 Loan falls under the "exception to the exception," the proper reading of the Interest Act is that the general rule applies.

## II. THE 2009 LOAN WAS NOT AUTHORIZED UNDER THE ILLINOIS CONSUMER INSTALLMENT LOAN ACT.

PCL argues that because the 2009 Loan does not fall under the business loan exception of the Interest Act, the loan somehow ceases to be a business loan altogether. Sur-Reply at 4. Instead, PCL claims that the 2009 Loan was made as a consumer installment loan authorized under the CILA, and was permitted by the Other Business Authorization PCL received from the Illinois Department of Financial and Professional Regulation, Division of Financial Institutions. *Id*. at 5.

7

But this argument is dead on arrival: (i) by its terms, the CILA does not apply to business loans like the 2009 Loan; and (ii) even ignoring this fact, the 2009 Loan could not have been authorized under the CILA because Mr. Chakwin is ***not a consumer*** and the 2009 Loan is ***not an installment loan***. The 2009 Loan has no conceivable relationship to the CILA. PCL's argument is misguided at best[9] and must be rejected.

### A. The Consumer Installment Loan Act is intended to authorize and regulate installment loans made to consumers, not business loans.

The CILA expressly states that it "***does not apply to business loans***." 205 ILCS 670 § 21 ("Application of Act"). This alone is enough to reject PCL's argument because the 2009 Loan was undoubtedly a business loan. *See supra* Section I. A.

All the same, Illinois courts routinely described the loans made pursuant to CILA as installment loans made to consumers for their personal use. *See, e.g., Chandler v. Am. Gen. Fin., Inc.* 768 N.E. 2d 60, 62–64 (Ill. App. Ct. 2002) (putative class action against lender under CILA for deceptive advertising for loans to "take care of back-to-school expenses" "pay off monthly bills" or for "vacations" and "home improvements"); *Kraft v. Number 2 Galesburg Crown Fin. Corp*, 420 N.E. 2d 865, 866 (Ill. App. Ct. 1981) (loan at issue "was a consumer loan, made for the [Plaintiffs'] personal and household uses").

---

[9] PCL's argument is poised on the edge of frivolousness, given that, as noted, PCL devoted no less than five pages of its First Reply forcefully arguing that the 2009 Loan is a business loan. *See* First Reply at 5–9.

8

In fact, the whole purpose of the CILA is to require retail lenders to make truthful disclosures about their installment loans and to protect consumers from abusive lending practices. *See Blue v. Number 2 Danville Crown Fin. Corp.*, 349 N.E. 2d. 445, 448 (Ill. App. Ct. 1976) (CILA's purpose is "to prevent the abuse of consumers in the installment loan situation"); *Holmes v. Number 2 Galesburg Crown Fin. Corp*, 396 N.E.2d 583, 585 (Ill. App. Ct. 1979) (CILA "was enacted to ensure a meaningful disclosure of credit terms to the consumer so that the consumer will be able to more easily compare the various credit terms available to him and avoid the uniformed use of credit.").

Accordingly, the CILA clearly does not authorize, nor was it intended to apply to, loans made to businesses such as Mr. Chakwin's solo legal practice.

### B. PCL did not make the 2009 Loan to Mr. Chakwin as a "consumer" under CILA because PCL knew the proceeds would be used to pay business expenses.

The 2009 Loan could not have been authorized under the CILA for another reason: the loan was not made to a "consumer" and is not an installment loan.

The CILA does not define the term "consumer" but, in the absence of a specific definition, courts "construe a statutory term in accordance with its ordinary or natural meaning." *See F.D.I.C. v. Meyer*, 510 U.S. 471, 476 (1994). Black's Law Dictionary defines a consumer as "a person who buys goods or services for ***personal, family, or household use*** . . . a natural person who uses products ***for personal rather than business purposes***." Black's Law Dictionary 139 (3rd Pocket Ed. 2006) (emphasis added); *cf. Meyer* at 476 (citing Black's Law Dictionary).

9

PCL knew full well that it was not making a loan to a "consumer" because it knew that "[Mr.] Chakwin sought the subject loan for the purposes of financing his law practice —a business— during the litigation of a significant slip and fall case in Nevada." First Reply at 8. The CILA does not apply.

**C.   The 2009 Loan is not an installment loan because it requires one end-of-term payment instead of consecutive weekly or monthly payments.**

The 2009 Loan has absolutely none of the necessary characteristics of a loan made under the CILA. Businesses lending pursuant to CILA must make loans that are "fully amortizing and [] ***repayable in substantially equal and consecutive weekly, biweekly, semimonthly or monthly installments***." *See* 605 ILCS 215 §§ 15(e)(3), (f)(1) (emphasis added).

The 2009 Loan does not fit the required installment loan structure at all. *See* Motion Ex. 4 at PREFERRED-000023. To the contrary, it clearly states "number of payments: one" and indicates the entire amount of the loan is due at the end of one full year, not weekly or monthly. *Id.* Moreover this payment is not "periodic" and so the 2009 Loan is not "fully amortized" because there is no payment schedule dividing the total amount owed under the agreement into equal parts. *See id.*

**III.   PCL'S INTERPRETATION OF THE INTEREST ACT AND THE CILA IS UNSUPPORTED BY LAW**

In interpreting and applying the Interest Act and the CILA, this Court must "ascertain and give effect" to "the intention of the legislature." *See Bridgestone/Firestone, Inc. v. Aldridge*, 688 N.E. 2d 90, 94 (Ill. 1997). The Illinois state legislature passed the Interest Act intending to protect borrowers by requiring

that certain financial transactions proceed, if at all, subject to a maximum allowable annual interest rate of 9%. *See Saskil v. 4-B Acceptance*, 453 N.E.2d 761, 766 (Ill. App. Ct. 1983) ("The purpose of the usury statue is to protect weak and necessitous borrowers . . . from [the] oppression of unscrupulous lenders."). In doing so, the legislature carefully balanced many competing interests by carving out an exception to the Interest Act for business loans, but also providing for interest rate limits when such loans are secured by a pledge of an individual's salary or compensation.

PCL has not identified any legal authority to explain how this Court could conclude that PCL's loan to a solo legal practitioner to pay business expenses was not a "business loan" at all, but was actually authorized under the Consumer Installment Loan Act. *See* Sur-Reply at 4–5. Even more so, PCL has not cited any authority that would support this Court in abandoning the clear meaning of the Interest Act to read into the statute a brand new class of exempt transactions that the legislature never intended: business loans made by lenders who also happen to be licensed under the CILA. *Id.*

PCL's motivation is not hard to understand. It is desperately searching for any port in the storm to avoid the serious penalties imposed by the Interest Act on lenders who knowingly make usurious loans. *See* 815 ILCS 205 § 6 (entitling obligor to recover twice all interest charged as a penalty in addition to attorney's fees and costs). But fear of the consequences of its actions does not somehow entitle PCL to have this Court warp and twist the application of important Illinois state

11

lending laws simply to reach PCL's desired result, which is in direct conflict with the Interest Act's plain language.

Nor should PCL, a nationwide lending company, be allowed to squirm away from the fact that it is a knowing usurer by claiming that it somehow used the wrong form in lending at a 39.95% interest rate. PCL is managed and partially owned by Brian Garelli, an Illinois lawyer whose firm is now representing PCL before this Court. *See* Affidavit of Brian Garelli in Support of Plaintiff's Reply sworn to November 27, 2013, ¶ 1 (describing Garelli as "the Manager and an owner" of PCL). PCL was more than happy to rely on the loan form at issue in making its original summary judgment motion, and only declared its use a "mistake" when PCL realized that Chakwin had cottoned onto its usurious loan program. Even then, Mr. Garelli could only assert his "belie[f]" that the Illinois choice of law provision "was included by mistake by one of my employees." *Id*. ¶ 14. PCL has presented absolutely no direct, admissible evidence to substantiate Mr. Garelli's "belief." The argument should be ignored, and PCL held to know the contents of the form contract it created and signed. *See, e.g., Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 460, 479 (Ill. 1998) ("[A]ny ambiguity in the terms of a contract must be resolved against the drafter of the disputed provision.")

In short, this Court should apply the plain meaning of the Interest Act to reach the inevitable result: the 2009 Loan is a business loan subject to the general interest annual interest rate maximum of 9% established by Section 4(1). By

charging Mr. Chakwin an enormous interest rate, at least 39.95% per year, PCL is a knowing usurer subject to statutory penalties under Section 6 of the Interest Act.

**IV. THE SAVINGS CLAUSE DOES NOT RESCUE PCL**

In its First Reply, PCL relied heavily on two paragraphs of the 2009 Loan Agreement: Paragraph 13, which states that if the interest rate charged is found to be in excess of the maximum legal rate allowed it will be reduced to that maximum rate; and Paragraph 20, which allows severance from the loan agreement of any void and unenforceable provision. First Reply at 4, 13–14. But PCL cites no case authority supporting the enforceability of these clauses in the usury context. *See id.* This is not surprising, because there is no such authority in Illinois. Indeed, courts throughout the nation frown on these clauses. *See, e.g., In re Global Outreach, S.A.*, 2010 WL 3957501, at *18-21 (Bankr. D.N.J. Oct. 6, 2010) *aff'd in part, rev'd in part*, 2011 WL 2294168 (D.N.J. June 6, 2011) (holding that a usury savings clause contained in a promissory note was unenforceable as against public policy). Courts correctly refuse to enforce such clauses in cases of usury because the alternative creates obvious moral hazards — an abusive lender would simply collect sky-high rates from most of its desperate borrowers, secure in the knowledge that if the lender is ever caught, the severance clause well let him duck all usury penalties and recover on the loan at the very same interest rates that responsible lenders receive. That is exactly what PCL seeks to do here. Given that the 39.95% interest rate goes to the very heart of this contract, and that PCL was obviously trying to take advantage of Mr. Chakwin, the severance clause must be disregarded.

## CONCLUSION

For the reasons stated above, Mr. Chakwin respectfully requests that this Court hold that the 2009 Loan is subject to the default 9% annual interest rate cap established by the Illinois Interest Act and that the loan was not authorized as a consumer installment loan. Further, this Court should deny PCL's Motion for Summary Judgment in its entirety, and grant Mr. Chakwin's Cross-Motion, including an appropriate award of statutory penalties and attorney's fees under the Illinois Interest Act, 815 ILCS 205 § 6.

Dated: November 7, 2014
New York, New York

-and-

**FRANKFURT KURNIT KLEIN & SELZ PC**

By: _/S/ Ronald C. Minkoff_
    Ronald C. Minkoff
      (admitted *pro hac vice*)
    Andrew J. Ungberg
      (admitted *pro hac vice*)
488 Madison Avenue, 10th Floor
New York, New York 10022
Tel: (212) 908-0120
Fax: (212) 593-9175
rminkoff@fkks.com
aungberg@fkks.com

**FLAHERTY & YOUNGERMAN, P.C.**

Christopher L. Gallinari
20 South Clark Street, Suite 1050
Chicago, Illinois 60603
Tel: (312) 782-4700
Fax: (312) 782-4725
cgallinari@fylegal.com

*Attorneys for Defendant Stephen D. Chakwin, Jr.*

# CERTIFICATE OF SERVICE

I, RONALD C. MINKOFF, hereby certify that the foregoing **DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' SUR-REPLY [ECF No. 64]** was served on the attorneys of record listed below via the Northern District of Illinois CM/ECF system on November 7, 2014.

>   Amy Galvin Grogan, Esq.
>   **GARELLI GROGRAN HESSE & HAUERT**
>   340 W. Butterfield Rd., Suite 2A
>   Elmhurst, IL 60126
>
>   *Attorneys for Plaintiffs Preferred Capital Lending, Inc. and Preferred Capital Lending of Nevada LLC*

>                    */S/ Ronald C. Minkoff*
>   Ronald C. Minkoff
>   488 Madison Avenue, 10th Floor
>   New York, New York 10022
>   Tel: (212) 908-0120
>   Fax: (212) 593-9175
>   rminkoff@fkks.comv