**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| Preferred Capital Lending, Inc. and Preferred Capital Lending of Nevada, LLC, | ) ) ) ) | Case No: 14 C 7409 |
| v. | ) ) ) | Judge Ronald A. Guzmán |
| Stephen D. Chakwin, Defendant. | ) ) ) | |

## MEMORANDUM ORDER AND OPINION

As set forth below, Preferred Capital's motion for summary judgment [26] is granted in part and Chakwin's cross-motion for summary judgment [31] is granted in part. Status is set for November 4, 2015 at 9:30 a.m. in order to set a trial date on the issue of whether the violation of the Illinois Interest Act was intentional. The parties are directed to meet and confer regarding (1) the relief, if any, Chakwin is entitled to in the event of a finding that the violation was unintentional; and (2) the status of Preferred Capital's remaining claims of breach of the covenant of good faith and fair dealing and special damages. The parties shall then each file a statement no later than October 26, 2015 indicating their responses to these two issues. In the event the parties agree on these issues, they may file a joint statement.

## STATEMENT

**Facts**

The relevant facts are undisputed and taken from Plaintiff's statement of facts. Preferred Capital Lending and Preferred Capital Lending of Nevada, LLC ("Preferred Capital") provide cash advances to plaintiffs, attorneys, and law firms on personal injury and workers' compensation cases. Stephen Chakwin is an attorney based in New York.

In or around June or July 2009, Chakwin, or someone acting on his behalf, approached Preferred Capital about obtaining a loan. Chakwin and/or his representative represented that the loan was necessary to assist Chakwin and his firm in the prosecution of a large personal injury case pending in Nevada. Preferred Capital agreed to extend Chakwin a loan, and on or about July 6, 2009, Chakwin signed a promissory note for a loan in the amount of $130,000.00. Chakwin personally signed the note in the Las Vegas office of Preferred Capital, and the note expressly states that it was executed in the State of Nevada. The terms of the July 6, 2009 note included a finance charge of $51,935.00, equal to 39.95%, for a total repayment sum of $181,935.00.

Chakwin was required to repay the loan by one year from the date of the agreement or upon receipt of the payment of his claim for attorneys' fees in the underlying personal injury lawsuit. The note includes an "automatic roll-over provision" under which, in the event of default, Chakwin and Preferred Capital agree to enter into a:

> Preliminary Note, Security Agreement and Assignment of Proceeds of the Claim in form and substance substantially identical to this Agreement (except that the principal amount of the Loan shall be equal to the original principal amount of the Loan, plus all accrued and unpaid interest on the Loan) by which the Payment Due Date shall be extended by the same term as the original Loan.

(Pls.' Stmt. Facts, Dkt. # 26, ¶ 17.) Preferred Capital loaned the money to Chakwin; however, he failed to repay the note when it became due on July 6, 2010. The automatic roll-over provision took effect, and because Chakwin has not repaid the note to date, Preferred Capital argues it is owed $555,481.42 under the terms of the note.

Preferred Capital filed a complaint in Nevada state court alleging money lent, breach of contract, breach of covenant of good faith and fair dealing, unjust enrichment, and special damages (*i.e.*, attorney's fees and costs). Chakwin removed the case to United States District Court for the

District of Nevada. After summary judgment had been briefed in the District Court of Nevada, it transferred the case under 28 U.S.C. § 1404(a) to this district pursuant to the forum selection clause in the loan documents. Neither side objected to the proposed transfer despite being given the opportunity to do so. Preferred Capital seeks summary judgment on its breach of contract and money lent claims. Chakwin seeks summary judgment on his affirmative defense of usury, as well as on Preferred Capital's equitable claims including money lent and unjust enrichment.

**Choice of Law**

Prior to addressing the merits of the claim, the Court considers the proper law to apply. The loan documents at issue contain a choice of law provision stating that the agreement "shall be construed in accordance with and governed by the internal laws of the State of Illinois." (Pls.' Mot. Summ. J., Dkt. # 26, Ex. 4 at ¶ 17.) Generally, when a transfer has taken place under § 1404(a), "the state law applicable in the original court also appl[ies] in the transferee court." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 582 (2013). However, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules . . . ." *Id.* "A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *Id.* Therefore, the Court applies Illinois' choice-of-law rules.

Under Illinois law, choice-of-law clauses are generally enforceable: "the law applicable to a contract is the law intended by the parties." *Smurfit Newsprint Corp. v. Southeast Paper Mfg.*, 368 F.3d 944, 949 (7th Cir. 2004). "When the parties express that intent (such as through a governing law provision), that express intent is generally recognized." *Id.*; *see also Simkus v. Cavalry Portfolio Servs., LLC*, 12 F. Supp. 3d 1103, 1108 (N.D. Ill. 2014) ("Courts generally defer to the

3

parties' designated choice of law provision in the contract."). Pursuant to this precedent, the Court would apply Illinois law to the claims in this case.

Preferred Capital contends that the Illinois choice-of-law provision was a mistake and the loan documents should have indicated that the law of Nevada, which has repealed its usury laws, applies to the loan documents. This assertion rings hollow in light of the fact that Preferred Capital analyzed its breach of contract claim under Illinois law in its opening motion for summary judgment, and expressly stated in a footnote that it was doing so pursuant to the Illinois choice-of-law provision in the promissory note at issue. (Pls.' Mot. Summ. J., Dkt. # 26, at 18 n.3.) It was not until its reply brief that it completely changed course and argued for the first time that the Illinois choice of law provision was a mistake and that Nevada law should apply. "Choice-of-law arguments are normally waivable." *Turnell v. CentiMark Corp.*, No. 14-2758, 2015 WL 4561195, at *3 (7th Cir. July 29, 2015). Because Preferred Capital made no effort to change the purported mistake and argued for the first time in 2013 that the choice-of-law provision in the 2009 loan document was incorrect, it has waived any argument that Nevada law should apply.

**Merits**

Chakwin does not dispute that he received the loan and it has not been repaid. (Decl. Opp'n Pls.' Mot. Summ. J. & Supp. Def.'s Cross-Mot. Summ. J., ¶ 4.) Chakwin asserts, however, that the interest rate on the loan usurious under the Illinois Interest Act[1] ("Act"), 815 Ill. Comp. Stat. 205/4,

---

[1] Ultimately, it is not clear what law Preferred Capital believes should apply. As noted, in its opening brief, Preferred Capital refers to the choice of law provision in the note and states that it therefore analyzed the breach of contract claim pursuant to Illinois law. Then, in its reply brief, it argues that the Illinois choice of law provision was included by mistake and intended to issue the loan pursuant to Nevada law. But in its subsequent Supplemental Reply, Preferred Capital contends that the loan is subject to the Illinois Consumer Installment Loan Act, thus taking it outside the strictures of the rate cap in the Illinois Interest Act.

which states that the maximum interest rate to be charged in Illinois is generally 9%. *Id*. Certain exceptions to the 9% cap exist, including for "any business loan . . . to a person owning and operating a business as a sole proprietor." 815 Ill. Comp. Stat. 205/4(c). Preferred Capital contends that the loan at issue falls within this business loan exception. *Whirlpool Fin. Corp. v. Sevaux*, 96 F.3d 216 (7th Cir. 1996) (noting that in deciding whether loan was a business loan under the Act, Illinois "courts found significant the fact that proceeds of the loan were in fact used for business purposes" and "also considered the fact that the individual borrowers had directed the proceeds of the loan to be paid to the corporation and the fact that the loans had been obtained in anticipation of future financial gain by the corporation, inuring to the benefit of the individual borrowers").

Chakwin, however, argues that the Act expressly states that "any loan which is secured . . . by an assignment of an individual obligor's salary, wages, commissions or other compensation for services, . . . shall be deemed not to be a loan within the meaning of this subsection [exempting business and other loans from the 9% cap] . . . ." 815 Ill. Comp. Stat. 205/4(c). Because the 2009 loan agreement states that the loan is secured by the assignment of Chakwin's fees in the underlying case, Chakwin contends that it is not a business loan under § 4(c) of the Act, and is therefore subject to the 9% cap. (Pls.' Mot. Summ. J., Ex. 4, ¶ 3 ("As security for the payment of the Loan, . . . the Borrower irrevocably assigns to the Lender all right, title and interest in the collateral sufficient to satisfy all obligations treated hereunder, including all fees in all cases that [B]orrower shall be entitled to claim and receive.").)

Preferred Capital responds that the assignment was for Chakwin's law firm's right to fees, not Chakwin's individual rights. But the promissory note defines "Borrower" as Stephen Chakwin, Jr. (*Id.*, at PREFERRED-000023.) Thus, the note expressly provided for the assignment of any fees

5

received by Chakwin. That the fee agreement in the underlying personal injury case includes a handwritten heading stating "The Law Offices of Stephen Chakwin" does not establish that Chakwin and "The Law Offices of Stephen Chakwin" are separate entities. Indeed, the Court notes that it appears that the Law Offices of Stephen Chakwin was operated as a sole proprietorship; thus, there is, as is relevant to this case, no difference between the obligations of the Law Office and Chakwin individually. *GMAC, LLC v. Hillquist*, 652 F. Supp. 2d 908, 919 (N.D. Ill. 2009) ("If that individual [operating a sole proprietorship] separately guarantees the debt of the sole proprietorship, he is guaranteeing debts for which he is already obligated; that second guarantee serves no purpose."). Moreover, as stated, the note expressly identifies as collateral the fees that the Borrower (*i.e.*, Chakwin) was to receive in the underlying case and attaches the fee agreement, which contains the heading "The Law Offices of Stephen Chakwin." Thus, Preferred Capital treated Chakwin and The Law Offices of Stephen Chakwin as one and the same for purposes of securing its loan to Chakwin. Therefore, because the Court concludes that the loan is secured by Chakwin's assignment of fees, it accordingly is not deemed a business loan, and is subject to the 9% cap provided for in the Act.

Preferred Capital then filed a Supplemental Reply based on documents its counsel received from Chakwin, arguing that the loan is not subject to the 9% cap under the Act because it is actually an installment loan under the Consumer Installment Loan Act ("CILA"), 205 Ill. Comp. Stat. 670/1 *et seq*. However, CILA applies only to installment loans that are "fully amortizing and . . . repayable in substantially equal and consecutive weekly, biweekly, semimonthly or monthly installments." 205 Ill. Comp. Stat. 215/15(e)(3), (f)(1).[2] The note expressly states that the number of payments is

---

[2] The Court also notes that CILA does not apply to business loans. Preferred Capital disingenuously contends in its Supplemental Reply that the loan is not a business loan, despite spending five pages of its original reply brief arguing that the loan *is* a business loan for

6

one and the amount is due at the end of one year, not in installments. (Pls.' Mot. Summ. J., Ex. 4, at PREFERRED-000023.) Therefore, the loan is not subject to CILA.

Chakwin asks that the Court impose penalties set out in the Interest Act in the case of knowing usury. "[W]hen a lender intentionally charges unlawful interest the obligor may recover double the amount of all interest determined by the contract." *Saskill v. 4-B Acceptance*, 453 N.E.2d 761, 766 (Ill. App. Ct. 1983). "The payments due and to become due including all interest, discount and charges included therein under the terms of the loan contract, shall be reduced by the amount which the obligor is thus entitled to recover." 815 Ill. Comp. Stat. 205/6.

Pointing to the affidavit of Brian Garrelli, the Manager and an owner of Preferred Capital, Preferred Capital states it intended for the loan to be governed by Nevada law, it is the "routine practice of Preferred Capital to include a Nevada choice of law provision for loans provided in Nevada," the 39.95% original interest rate provided for in the loan complies with Nevada law, Garrelli believes that the Illinois choice of law provision was included by mistake by one of Preferred Capital's employee's, and that "up until the time of this lawsuit, [he] believed that the subject loan included a Nevada choice of law provision." (Pls.' Reply, Ex. 5, Garrelli Aff., ¶ 11, 13.) Chakwin, on the other hand, contends that Preferred Capital was "well aware" of the interest rate it was charging and that it "may not deny knowing the contents of its own form loan agreement, including the interest rate it requires." (Def.'s Mem. Opp'n Pls.' Mot. Summ. J. & Supp. Def.'s Cross-Mot. Summ. J., at 8.)

"The court may consider extrinsic or parol evidence, even if the contract is not ambiguous,

---

purposes of the Illinois Interest Act. Indeed, Preferred Capital's Manager and one of its owners, Brian Garrelli, attests that "[i]t was [his] understanding that Chakwin's loan was for business purposes." (Pls.' Reply, Ex. 5, Garrelli Aff., ¶ 16.)

to determine whether there was an intentional violation of the statute." *Andrews v. Cramer*, 629 N.E.2d 133, 136-37 (Ill. App. Ct. 1993). The Court finds that questions of fact preclude summary judgment regarding whether the violation of the Illinois Interest Act was intentional. *Id*. at 137 (denying summary judgment in part because "question of fact as to whether the plaintiff and the defendant intended to contract for a usurious interest rate"). While it is clear that Preferred Capital knew the interest rate it was charging, according to Garrelli, it believed the loan was governed by Nevada law, where the rate was legal, and that the inclusion of the Illinois choice of law provision was a mistake. On the other hand, in urging the Court to conclude that Preferred Capital knowingly violated the usury statute, Chakwin notes that Preferred Capital drafted the terms of the loan and that Garrelli is an Illinois attorney. However, given the conflicting evidence, the Court concludes that it cannot find at this juncture that, as a matter of law, Preferred Capital knowingly charged a usurious interest rate in violation of Illinois law.

Finally, Chakwin contends that he is entitled to judgment on the equitable claims given the existence of a written contract. *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) ("But a plaintiff may not pursue a quasi-contractual claim where there is an enforceable, express contract between the parties."). The Court agrees and grants judgment in Chakwin's favor with respect to Preferred Capital's claims for money lent and unjust enrichment.

**Conclusion**

For the reasons stated above, Preferred Capital's motion for summary judgment is granted in part and Chakwin's motion for summary judgment is granted in part. Chakwin is granted judgment on Preferred Capital's equitable claims given the existence of a written contract. The Court finds that Chakwin breached the loan agreement by failing to repay the money he was lent;

however, the Court further concludes that the amount of interest provided for in the agreement violated the Illinois Interest Act. A genuine issue of material fact exists as to whether the violation of the Illinois Interest Act was intentional. Status is set for November 4, 2015 at 9:30 a.m. in order to set a trial date on the issue of whether the violation of the Illinois Interest Act was intentional. In the meantime, the parties are directed to meet and confer regarding: (1) the relief, if any, Chakwin is entitled to in the event of a finding that the violation was unintentional; and (2) the status of Preferred Capital's remaining claims of breach of the covenant of good faith and fair dealing and special damages. The parties shall then each file a statement no later than October 26, 2015 indicating their responses to these two issues. In the event the parties agree on these issues, they may file a joint statement.

**Date**: October 7, 2015          _____
                                   **Ronald A. Guzmán**
                                   **United States District Judge**